GEORGE C. WOLFE, *et al.*, Plaintiffs in Error, *vs.* WM. D. MARSHAL, *et al.*, Defendants in Error.

1. *Duress—Payment of money—When recoverable.*—Payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary, when it is made to procure the release of the person or property of the party from detention, or where the other party is armed with apparent authority to seize upon either, and the payment is made to prevent it.

### Error to St. Louis Circuit Court.

*R. S. McDonald and M. Kinealy*, for Plaintiffs in Error, cited: Beckwith vs. Frisbie, 32 Vt., 563; Parker vs. The Bristol R. Co., 6 Exch., 702; Parker vs. G. W. R. Co., 7 Scott, N. R., 835; Astly vs. Renolds, 2 Strange, 916; Tutt vs. Ide, 3 Blatch. C. C., 249; Cobb vs. Charter, 32 Conn., 358; Cunningham vs. Munroe, 15 Gray, (Mass.,) 472; Oates vs. Hudson, 6 Exch 346; 1 Parsons on Contract, Title "Duress"; Chitty on Cont. Title, "Involuntary Payment"; Claflin vs. McDonough, 33 Mo., 415; Dixon vs. Holden, 7 Eq., Cases (Eng.) 488; See Sartwell vs. Horton, 28 Vt., 373.

*Sharp & Broadhead*, for Defendants in Error.

I. A person who with free knowledge of the facts, voluntarily pays money when demanded by another under a claim of right, cannot recover it back. (Mays vs. City of Cincinnati. 1 Ohio, (McCook,) 268; Claflin vs. McDonough, 33 Mo., 412; Preston vs. Benton, 12 Pick., 7; Brisbane vs. Dacres, 5 Taunton, 143; Sessions vs. Meserve, 46 N. H., 167; Downs vs. Donnelly, 5 Ind., 496; Dickerman vs. Lord, 21 Iowa, 338; Patterson vs. Cox, 25 Ind., 261; Mowatt vs. Wright, 1 Wendell, 355; Baltimore vs. Lefferman, 4 Gill, 425; Cook vs, Boston, 9 Allen, (Mass.,) 393; Brown vs. McKinally, 1 Espinasse, 279; Evans vs. Gale, 18 N. H., 397; Colwell vs. Peden, 3 Watts, 327.)

II. To render a payment involuntary or under duress, it must be made to release the person, or recover the goods of the party making the payment, from the actual custody or possession of another, or to prevent the seizure of either by one

who *is armed with apparent authority* to sieze them *without resorting to an action at law*, and the fact that the money was paid upon an illegal or unjust demand, does not affect the case. (Lima Township vs. Jenks, 20 Ind., 301; Knibbs vs. Hall, 1 Espinasse, 84, and cases cited above.)

WAGNER, Judge, delivered the opinion of the court.

If we admit what is contended for by the plaintiffs, that the court erred in excluding evidence offered by them in reference to the custom of boats and the knowledge of the defendants when they purchased the boat that plaintiffs had leased the bar for a specific period, still that cannot in any wise change the final result in this cause. Plaintiffs' claim to recover is based solely upon the ground that payment of money was extorted by duress. In their petition they aver in substance that in March, 1864, one T. P. Perkins was the sole owner of the steamboat Magnolia, and that he by an instrument in writing sold and made over to plaintiffs for three years running time the bar on said boat, that by the usages and custom of steamboat trade it was understood that a sale of the bar carried with it to the purchaser the privilege of selling liquor on the boat and being provided with board for the necessary bar-keepers. That in November, 1865, Perkins sold the boat to defendants, and that after the sale and until in May 1866, plaintiffs remained in possession of the bar receiving board. That at the time last mentioned defendants demanded of plaintiffs four hundred dollars for board of bar-keepers from November, 1865 till May, 1866, threatening, in default of payment, to eject plaintiffs, their bar-keepers and goods stored in the bar from the boat. That at the time the defendants were insolvent and that under fear of injury to their persons and property, they paid defendants their demand under protest and duress. There was a second count in the petition for the payment of subsequent board under like circumstances.

The facts as shown in the testimony are briefly these: In the month of November, 1865, defendants purchased the steamboat absolutely of Perkins and received a bill of sale there-

for.   Shortly after the purchase the boat went down the river and did not return until the following March, 1866.   During all this time plaintiffs occupied and used the bar and kept two bar-keepers on board who were boarded and lodged on the boat.   When the boat returned to St. Louis, defendants demanded of plaintiffs two hundred and fifty dollars per month for rent of the bar and board of their bar-keepers. Plaintiffs declined paying that or any other amount, and claimed that they had a lease of the bar from Perkins which gave them the right to use the same, and to have two bar-keepers boarded on the boat for three years from August, 1865.

Before the matter was settled or any definite arrangement made, the boat again went down the river and did not return till May, 1866.   When the boat returned plaintiffs and defendants all met on the boat to effect a settlement.   Defendants claimed that plaintiffs were bound to pay them and plaintiffs contended that they were not.   Defendants finally declared that unless plaintiffs paid them, they would institute proceedings against them.   Plaintiffs asked time till the next day to consult counsel, which defendants granted.   On the following day the parties again met on the boat when the plaintiffs said it was a hard case all around and offered as a compromise to pay defendants one hundred and fifty dollars per month in lieu of the two hundred and fifty dollars per month demanded.   After some consultation this proposition was accepted and the money was accordingly paid.   It does not appear that defendants offered any violence to plaintiffs or their property.   The defendants both testify that they made no threats, that they merely told the plaintiffs that if they did not pay they would take legal steps to assert their rights.   One of the plaintiffs testified that the defendants said they would dispossess them if they did not pay, but they did not say how they would dispossess them, he supposed they meant by law.   The other plaintiff in his evidence said that defendants threatened to open another bar on the boat and put plaintiffs' bar-keepers off, but they did not say how they would put them off.   Such in

substance is the case as shown by the pleadings and bill of exceptions. There is no pretense that the money was paid under any mistake of facts, but it abundantly appears that it was paid with a full knowledge of all the surrounding circumstances. It is not claimed that there was anything more than mere words constituting the duress. There is nothing in the case going to show that defendants ever intended to resort to anything outside of the law to vindicate their supposed rights. Generally a threat of legal process is not duress, for the party may plead and make proof and show that he is not liable.

In Claflin vs. McDonough, (33 Mo., 412,) it was declared that to constitute duress, there must be a seizure of the property or arrest of the person or a threat or attempt to do one or the other, or facts should be stated which tend to show, or which warrant the conclusion that such an arrest or seizure could be avoided only by the payment of the sum demanded. The current of authorities is in accordance with the doctrine laid down by Lord Kenyon, (Falliam vs. Down, 6 Esp., 26,) that a voluntary payment of an illegal demand, the party knowing the demand to be illegal, without an immediate and urgent necessity (unless to redeem or preserve his person or goods) is not the subject of an action for money had and received.

In Mays vs. Cincinnati, (1 Ohio St., 268), the court say: That to make the payment of an illegal demand involuntary, it must be made to appear that it was made to release the person or property of the party from detention, or to prevent a seizure of either by the other party having apparent authority to do so without resorting to an action at law.

The principle is very clearly stated by the Supreme Court of Massachusetts in the case of the Boston and Sandwich Glass Co. vs. The City of Boston, (4 Metc., 181). The court, after laying down the general rule to be " that if a party with a full knowledge of all the facts of the case voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, he cannot afterwards allege such payment to have

Wolfe et al., v. Marshal, et al.

been made by compulsion and recover back the money, even though he should protest at the time of such payment that he was not legally bound to pay the same" proceed to say, "The reason of the rule and its propriety are quite obvious, when applied to a case of payment upon a mere demand of money unaccompanied with any power or authority to enforce such demand, except by a suit at law. In such case if a party would resist such unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded it should precede payment."

There are many cases on the subject and the conclusion clearly deducible from them is, that a payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention, or when the other party is armed with apparent authority to seize upon either and the payment is made to prevent it. But where he can only be reached by a proceeding at law, he is bound to make his defense in the first instance and he cannot postpone the ligitation by paying the demand and afterwards suing to recover it back.

In the present case neither the persons nor the property of the plaintiffs were seized or detained, nor was the defendants armed with any apparent authority to seize upon either. The payment was not made to preserve the inviolability of the person or to redeem property illegally held, or to prevent its unlawful seizure. The only remedy defendants proposed was to test their rights by proceedings at law, and the plaintiffs if they did not rightfully owe the claim, should have resisted and contested the matter at law. But instead of this they proposed the compromise and now seek to recover the money back after the lapse of several years. This I do not think they can do. Applying the facts to the law I have not been able to discover that the court below committed any error in giving or refusing instructions.

Wherefore, in my opinion the judgment should be affirmed. All the Judges concur.