## JASON YOUNGS

### v.

## WILLIAM J. SIMM AND FRANCES M. SIMM.

*Negotiable Instruments—Note—Duress.*

1. In order, in an action thereon, to justify the defense that the makers of a note were induced to execute the same by means of threats and through fear, it must be shown that the threats were such as would naturally excite such a fear as would overcome the will of a person of ordinary courage; and such fear must be grounded upon reasonable belief that the person who threatens has at hand the means for carrying his threat into present execution.

2. Where the party making the threat is not, and is not represented to be, in any position, and has no means for carrying out his threat other than such as are possessed by all members of the community—where the liberty of the person against whom the threat is made is in no wise restrained, and the threatener has made no complaint, has no warrant, and is not represented to have, and neither has, or appears to have at hand or within control, any means for carrying into execution his announced purpose, mere threats of arrest do not constitute duress.

[Opinion filed June 2, 1891.]

IN ERROR to the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Mr. F. W. S. BRAWLEY, for plaintiff in error.

Mr. M. P. BRADY, for defendants in error.

WATERMAN, J. The plaintiff having, by reason of his becoming surety for William J. Simm, paid for him the sum of $111.30, and William J. Simm being engaged to be married to a Miss Brubaker, of Freeport, plaintiff, in the hearing of her brother, stated that when William J. Simm came to Freeport to be married, he, plaintiff, would have him arrested for obtaining money from him, plaintiff, by false pretenses, unless Simm paid him his claim. Miss Brubaker's brother at once wrote to Simm what he had heard plaintiff say. Undaunted by this warning, Simm and his mother went November 23d to

Youngs v. Simm.

Freeport, and Simm, upon his arrival, called upon plaintiff and told him what Brubaker had written to him.

In the course of the conversation, plaintiff stated that he would have him, Simm, arrested, unless he paid him, plaintiff, $111.30, which he said he had paid as surety on an appeal bond. Simm stated to plaintiff that he could not pay the money. Plaintiff replied, "You must pay the money or you and your mother must give me a note for it at ninety days."

Thereupon plaintiff drew up a note, William Simm took it away and presently returned with it, signed by himself and his mother, the defendants.

Mrs. Frances M. Simm testified that her son informed her that plaintiff would have him arrested at Freeport that day on a charge of obtaining money from him, plaintiff, on false pretenses, unless she signed the note, and that she signed it solely because she believed and feared that unless she did so, plaintiff would have her son arrested on a charge of alleged crime; and the defendant William Simm testified that he signed the note solely because he had the same belief and fear.

Suit being brought upon the note, the jury were instructed as follows:

"If the jury believe from the evidence that before and about the time of the making of the note sued on, the plaintiff threatened to have the defendant, William J. Simm, arrested on a charge of crime, and that the said Simm was intimidated by such threats and believed that unless he did execute the note in question he would be arrested, and if the jury further find from the evidence that he and his mother, this co-defendant, made said note to the plaintiff at his request, in consideration that the plaintiff would not execute such threat and through fear that the plaintiff would arrest young Simm if they did not sign said note, and that such was the consideration for which, and means by which, the note was made, then the court instructs you to find the issues for the defendants."

This instruction omits all mention of an important and essential element—that which will make mere threats of arrest, duress.

Where the party making the threats is not, and is not rep-

resented to be, in any position, and has no means for carrying out his threat other than such as are possessed by all members of the community, that is; where the liberty of the person against whom the threat is made is in no wise restrained and the threatener has made no complaint, has no warrant, and is not represented to have, and neither has or appears to have, at hand or within his control any means for carrying into execution his announced purpose, mere threats of arrest do not constitute duress.

The threat must be such as would naturally excite such a fear as would overcome the will of a person of ordinary courage; and such fear must be grounded upon reasonable belief that the person who threatens has at hand the means for carrying his threat into present execution.   Duress, American & E. Encyclopædia of Law, Vol. 6, p. 64; Harmon v. Harmon, 61 Maine, 231; Seymour v. Prescott, 69 Maine, 376; Higgins v. Brown, 78 Maine, 473; Buchanan v. Saplein, 9 Mo. App. 552, 558; Wolfe et al. v. Marshall et al., 52 Mo. 167–171; Landa v. Oberd, 45 Tex. 539; Bosley v. Shanner, 26 Ark. 280; United States, Lyon, et al. v. Huckabee, 16 Wallace, 414, 432.

It is a "well grounded apprehension," that, even in the case of fear of loss of life or limb, will suffice to avoid a deed, because of duress.   Cooley's Blackstone, Vol. 1, p. 130.

The Supreme Court of the United States in United States, Lyon, et al. v. Huckabee, *supra*, say:

"Unlawful duress is a good defense to a contract if it includes such degree of constraint or danger, either actually inflicted or threatened and impending, as is sufficient to overcome the mind and will of a person of ordinary firmness."

In Wolfe et al. v. Marshall et al., *supra*, the Supreme Court of Missouri say that the conclusion clearly deducible from the cases is that a payment of money upon an illegal or unjust demand when a party is advised of all the facts, can only be considered involuntary when it is made to secure the release of the person or property of the party from detention or when the party *is armed with apparent authority* to seize upon either and the payment is made to prevent it.

In the present case no complaint had been made, no warrant issued, nor was there a representation or belief that anything of the kind had been done. The plaintiff had at hand no means of arresting the defendant, William Simm. William Simm must have known that only by the commission of perjury could a warrant for his arrest be obtained.

There is nothing save his own statement to show that William Simm either had any well grounded fear of arrest or that he had such fear at all.

Knowing of the threat contingent upon his going to Freeport, he goes there and seeks out the plaintiff; he was actuated by no fear of disclosure, because the brother of his affianced had communicated to him the threat.

Mrs. Simm never saw the plaintiff; her son told her, not what the plaintiff had just said to him, "that he would have him arrested unless he paid plaintiff $111.30," but "that plaintiff would have him, William, arrested at Freeport that day on a charge of obtaining money by false pretenses unless she signed the note."

Neither William Simm nor his mother had any reason to fear or believe that the plaintiff had at hand any means for carrying out his threat. The age of William is not shown, but it appears that he had before been in partnership with a son of the plaintiff in publishing a directory at Elgin, Illinois; he had then, certainly, some knowledge of men and business; he was not an unsophisticated youth.

There does not appear to have been lack of opportunity or time to consult with friends and counsel; he was perfectly free, going where he chose and seeing whom he thought proper. He manifestly had some friends at Freeport. He is not shown to have been, nor is his mother, excited or agitated. He owed an honest debt, not only that, a debt of honor, an obligation to indemnify a surety who had responded for him. To give his note for this was an honest and proper thing to do; for his mother to sign it with him was neither strange nor unnatural; she was under no legal obligation to do so, but that she should have been willing to become responsible for such an obligation, is not to be wondered at. She does not appear to have been a weak woman or he a callow youth.

The jury ought not to have been instructed as they were in regard to threats and fear; nor ought the implication contained in said instruction that there was evidence that those things constituted the only consideration for the note, to have been made.

The debt, the money paid by plaintiff for William Simm, constituted the consideration of the note.

The consideration for the note was good and valuable; the only defense set up by any evidence was that the makers had been induced to execute it by means of threats and fear.

The judgment of the court below is reversed and the cause remanded.                    *Reversed and remanded.*

GARY, J., dissenting.    To collate the authorities upon the subject of duress would be an almost endless labor.    The Supreme Court has usually contented itself, when the subject has been before it, with a very slight reference to prior cases. Bane v. Detrick, 52 Ill. 19; Pemberton v. Williams, 87 Ill. 15.

If, as in this last case, withholding the delivery of a deed to which a party is entitled and which he greatly needs, unless more than is due is paid, is duress, for which the excess paid may be recovered, surely it is duress to obtain a note by inspiring a well grounded fear of the execution of a threat unlawfully

> " To take away
> The edge of that day's celebration
> When I shall think, or Phœbus' steeds are founder'd
> Or night kept chain'd below."